*257 WILKINSON, Circuit Judge,
dissenting:
I thank Judge Duncan for her fine opinion. This is not an easy case, and there exists a square conflict between the Ninth Circuit, United States ex rel. Lujan v. Hughes Aircraft Co., 162 F.3d 1027, 1035 (9th Cir.1998) (state statute of limitations for wrongful discharge applies to anti-retaliation claims under section 3730(h)), and the Seventh Circuit, Neal v. Honeywell, Inc., 33 F.3d 860, 865-66 (7th Cir.1994) (six-year statute of limitations in section 3731(b) applies to claims under section 3730(h)). In my judgment, the Lujan court advances the better interpretation of the False Claims Act, 31 U.S.C. §§ 3729-3733 (2000). The sole issue in this interlocutory appeal is whether the district court correctly held that North Carolina’s three-year statute of limitations for wrongful discharge applies to complaints of retaliatory conduct brought under section 3730(h) of the FCA. For reasons expressed by both Lujan and the district court, I agree that the three-year limitations period applies.
My colleagues, by contrast, hold that under section 3731(b) an employer’s submission of false claims commences a six-year statute of limitations for the independent event of retaliation against an employee. The majority thus introduces an unprecedented oddity into state and federal law by disconnecting the statute of limitations for anti-retaliation claims from the actual retaliatory acts themselves. The majority offers a number of policy rationales to support its result. But these rationales are found nowhere in the text of the FCA and rest on scant support in the legislative history.
The majority suggests its approach to the statute has this or that advantage, but I do not think it acknowledges adequately all the debits of its departure from the statutory text. Its approach fails to give employees adequate notice concerning when the statute of limitations begins. Worse still, it may preclude challenges to retaliatory acts under section 3730(h) before that cause of action has even accrued. The majority also undermines the entire basis for a statute of limitations by counseling judges to exercise equitable tolling powers to recognize claims whenever the drawbacks of its interpretation of the FCA become too apparent to ignore.
And, of course, six years is a long time. Deaths, departures, and forgetfulness can occur in such a period, and the relevant evidence has often faded. That is not to say that Congress could not mandate such a period, only that it has not chosen a time frame so far in excess of analogous state provisions.
So I believe the majority is mistaken. In the absence of an express federal statute of limitations, the district court properly applied the statute of limitations for the most closely analogous state action of wrongful discharge. See Reed v. United Transportation Union, 488 U.S. 319, 323-24, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). North Carolina’s three-year statute of limitations for wrongful discharge affords a whistle-blowing employee both adequate notice and a reasonable period of time to file anti-retaliation claims.
I.
A.
The starting point for our inquiry must be the text of the statute. The FCA’s sole statute of limitations provision states:
(b) A civil action under section 3730 may not be brought — ■
(1) more than 6 years after the date on which the violation of section 3729 is committed, or
*258 (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
whichever occurs last.
31 U.S.C. § 3731(b). Since anti-retaliation claims under section 3730(h) are part of section 3730, my colleagues contend a plain reading suggests that the statute of limitations applies. But “[t]he answer is not so simple.” Lujan, 162 F.3d at 1034.
Unfortunately, the majority’s purported plain language interpretation lops off half the statute. It overlooks the fact that both prongs of the statute of limitations turn explicitly on events independent from any alleged retaliatory actions. This fact alone suggests that the statute of limitations does not apply to anti-retaliation claims.
The first statutory limitations period begins with the occurrence of a section 3729 violation. 31 U.S.C. § 3731(b)(1). The text of this provision could not be more plain. The six-year period is tied to a “violation of section 3729” and nothing else. Because an anti-retaliation claim does not involve a “violation of section 3729” but instead a violation of section 3730(h), by its own terms section 3731(b)(1) cannot apply. Section 3729 addresses only the submission of false claims to the federal government. Section 3729 does not address retaliatory actions by employers against whistle-blowing employees. Indeed, an employer may wrongfully retaliate against a whistle-blowing employee even in the absence of section 3729 violations, which would leave this statute of limitations without a starting point. Retaliation by an employer may also occur more than six years after the employer committed the false claims violations, which would leave the employee without a cause of action. Therefore, it seems incongruous to say the least that an employee’s ability to bring retaliatory claims should turn on when or whether the employer has submitted false claims to the government in violation of section 3729. See United States ex rel. Ackley v. International Business Machines Corp., 110 F.Supp.2d 395, 401-03 (D.Md.2000).
The second statutory limitations provision also has nothing to do with anti-retaliation claims under section 3730(h). See 31 U.S.C. § 3731(b)(2). This alternative statute of limitations commences on the date when federal officials charged with responsibility to act under the FCA knew or reasonably should have known material facts concerning the section 3730 claim. But this is a logical impossibility in the case of section 3730(h) claims. No United States official is responsible for anti-retaliation claims under section 3730(h), and no official can even file an anti-retaliation action on behalf of an affected employee. A whistle-blowing employee is the only individual empowered to bring challenges to retaliatory actions under section 3730(h). Therefore, it would seem impossible to link the statute of limitations for anti-retaliation claims to this provision.
In sum, applying either of the section 3731(b) limitations periods to section 3730(h) anti-retaliation actions is like cramming squares in circles. In neither language nor logic do they fit.
B.
Prior to 1986, section 3731(b) stated that “[a] civil action under section 3730 of this title must be brought within 6 years from the date the violation is committed.” 31 U.S.C. § 3731(b) (1982). This pre-1986 *259 provision clearly established that a six-year statute of limitations applied to all section 3730 claims.
If Congress had retained this language when it added anti-retaliation actions to the FCA, then our job would be simple. But Congress in 1986 chose to amend the FCA, and we must “presume that language added by amendment was not mere surplusage.” Salomon Forex, Inc. v. Tauber, 8 F.3d 966, 975 (4th Cir.1993). Congress introduced in 1986 a cause of action for retaliatory acts under section 3730(h). Simultaneously, Congress revised the statute of limitations provision under section 3731(b) in two significant ways.
First, Congress narrowed the applicability of the statute of limitations to “violations of section 3729.” See 31 U.S.C. § 3731(b)(1). If Congress had intended that a six-year statute of limitations apply to section 3730(h) anti-retaliation actions, it would not have made an employer’s false claims violations the thing that starts the statute running. Second, Congress would not have added the alternative provision that the statute of limitations for section 3730 runs three years after an official knew or reasonably should have known of facts material to the right of action. See 31 U.S.C. § 3731(b)(2). Both of these changes mean that the statute of limitations applies only to section 3730 claims that concern the employer’s false claims violations under section 3729 and not to challenges to retaliatory acts brought by an employee under section 3730(h). To decide otherwise suggests that this statutory change is meaningless and contravenes the well-established rule that “[w]hen Congress alters the wording of a statute, we must presume Congress intended a change in the law.” Lackey v. Johnson, 116 F.3d 149, 152 (5th Cir.1997).
The majority asserts that “ § 3730(h) subsumes a violation of § 3729, even if it does not do so explicitly.” Op. at 251. This is an implicit argument, and we do not interpret cross-references in statutes in this fashion. We must presume that when Congress incorporates statutory cross-references, it is careful in laying out the provisions to which the references occur. Here the references in section 3731(b) include section 3729, but do not include section 3730(h). When Congress includes one provision, it is safe to assume that it excludes others, absent evidence to the contrary. Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). While this principle may not serve as an infallible guide to statutory interpretation, it surely applies here.
My colleagues also point to a piece of legislative history, which indicated the Senate’s initial intent to place whistle-blower protections under a separate section of the FCA. See Op. at 251-52. The majority claims that the ultimate inclusion of challenges to retaliatory acts under section 3730(h) suggests that Congress somehow decided that section 3731(b) would establish the statute of limitations for these claims. This interpretation rests on a negative inference, and nothing affirmatively suggests that Congress added anti-retaliation claims to section 3730 with this purpose in mind.
In an effort to explain its conclusion, the majority states that Congress was, in effect, enacting a statute of repose. Op. at 253. But, of course, Congress was doing nothing of the sort. Indeed, it is startling for the majority to suggest that Congress was bent, in the FCA no less, on establishing “repose” for employers who first defrauded the government and then moved against the very persons who brought that fraud to light. Section 3731(b) is self-evidently a statute of limitations.
The majority implies that when it picked the point to start the limitations period, *260 Congress either did not know the difference between sections 3729 and 3730, or that it inadvertently neglected to include a reference to an immediately adjoining section of the statute. There is another explanation, however — namely that Congress did not include a reference to section 3730 because it did not wish to include such a reference. The actual statutory changes that Congress did enact underscore the point that Congress did not intend for section 3731(b) to apply to section 3730(h) claims. As the Lujan court held, “[i]n the absence of some meaningful indication to the contrary, we must therefore presume that, in amending section 3731(b) so that the limitation runs only from the date of a violation of section 3729, Congress did not intend that the statute apply to section 3730(h).” Lujan, 162 F.3d at 1035.
C.
The majority’s interpretation is at odds with all statutes of limitations for wrongful discharge, which commence with the occurrence of the retaliatory acts. See, e.g., N.C. Gen.Stat. § l-52(5)(2003); Va.Code Ann. § 8.01-248 (2003); W. Va.Code § 55-2-12 (2003). By holding that the statute of limitations for anti-retaliation actions is set in motion by some independent event, rather than by the retaliatory acts themselves, the majority denies employees adequate notice of when they can bring a claim. Indeed, the majority’s interpretation may fail to provide any notice at all to employees as to when their claims may commence or be foreclosed. There is a reason that statutes of limitations for anti-retaliation actions begin with the alleged retaliatory event. Because the retaliation bears adversely on the affected employee, it serves as the best possible notice that the employee may henceforth seek redress.
This same reason suggests why Congress did not mandate a six-year statute of limitations for section 3730(h) actions. Since false claims themselves are acts of deception, it makes sense for a longer statute of limitations to provide time to uproot the deception. But this is simply not a concern for employees under section 3730(h) who will feel the sting of the retaliatory actions at the moment they occur.
The matter seems almost second-nature. Statutes of limitations for personal injury claims begin to run on the date of the injury. Statutes of limitations for wrongful discharge claims begin to run on the date of the discharge. In an action challenging a wrongful act, the limitations period generally begins on the date of the act. In short, I am unable to understand why my friends in the majority go to such extraordinary lengths to resist such a thoroughly ordinary principle.
The majority’s interpretation also casts uncertainty over the ability of affected employees to raise claims. For example, under its interpretation a whistle-blowing employee could report on his employer’s submission of a false claim some five years or more after the claims were submitted, yet be fired with apparent impunity just months later. The problem is thus that the existence of an independent trigger for the statute of limitations narrows the window of opportunity for affected employees to make challenges to retaliatory actions under section 3730(h). My colleagues summon judges to exercise their equitable tolling powers in such instances to override the limitations period in the interests of justice. But the idea that a statute of limitations could expire even before the cause of action comes into being is not one that we should jump to conclude that Congress intended to embrace. Reliance on equitable tolling in these circumstances undermines the value of having a statute *261 of limitations in the first place and vests courts with unpredictable discretion with regard to late claims. The uncertainties of equitable tolling may make it more difficult for discharged whistle-blowers to secure legal representation. Lawyers may be reluctant to take on late challenges to retaliatory actions if there is only a chance that judges will exercise equitable tolling powers to recognize them.
The majority chides the dissent for manifesting a concern about future employees and not the employee in this case. But efforts to rescue a present plaintiff cannot justify creating problems for future plaintiffs that Congress did not intend. My colleagues respond to these problems with various policy pronouncements. The majority posits that Congress chose to have section 3731(b) apply to anti-retaliation actions under section 3730(h) to further “simplicity of administration.” Op. at 251-52. Nowhere in the statute or legislative history is Congress’ desire for simplicity of administration articulated. Simplicity of administration is certainly not furthered by the majority’s exhortation for judges to use equitable tolling. Nor is simplicity of administration advanced by the majority’s discussion of what actually constitutes a “violation” of section 3729. Op. at 254-55. In this connection, we are told we need not await a judicially determined violation, but what other than that might suffice to set the statute running is left unclear. And to have all this in the course of a discussion on administrative ease and convenience underscores the fact that the majority’s interpretation will present us with anything but.
In support of its result, the majority claims there is generally a close temporal relationship between protected acts and retaliatory conduct, and that it is easier to know when fraud against the government occurs than when retaliatory actions occur. Op., at 251. These arguments are speculative. Whether false claims or retaliatory actions are easier, to identify will depend on which claim or which action one happens to be talking about. And as for the “close temporal relationship between a protected act and the retaliatory conduct based on it,” Op. at 253, an employer, and especially one aware of the majority’s limitations rule, could resolve not to “get mad,” but in the longer run “to get even.” The majority finally argues that “the length of the limitations period in § 3731(b)(1) lessens the likelihood that the purportedly absurd consequences advanced by the Appellees would occur.” Op. at 253. This too is hardly self-evident, because the discovery of false claims, predicated on deceptive practices, may not occur until late in the day. In all events, these sorts of judgments are legislative, not judicial in nature, and they afford no basis for ignoring the fact that Congress pegged the six-year limitations period to violations of section 3729, not section 3730(h), in the statute itself.
II.
“Congress not infrequently fails to supply an express statute of limitations when it creates a federal cause of action. When that occurs, ![w]e have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law.’ ” Reed, 488 U.S. at 323, 109 S.Ct. 621 (quoting DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 158, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)). Since Congress enacted section 3730(h), but provided no statute of limitations,' we must apply state law where the retaliatory actions took place. The North Carolina statute concerning wrongful discharge is the most analogous provision for a retaliatory discharge under the FCA. See Renegar v. *262 R.J. Reynolds Tobacco Co., 145 N.C.App. 78, 549 S.E.2d 227, 229 (2001). The three-year statute of discharge should therefore apply and begin at the time the discharge in this case took place. See N.C. Gen.Stat. § 1-52(5) (2003). The challenge to the retaliatory action here occurs almost four years after this point and should thus be time-barred.
In applying state law, “ ‘[i]t is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national polices.’ ” Reed, 488 U.S. at 324, 109 S.Ct. 621 (quoting Occidental Life Ins. Co. of California v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977)). Application of the state statute of limitations in this context would not “frustrate or interfere with the implementation of national policies” or “be at odds with the purpose or operation of federal substantive law.” North Star Steel Co. v. Thomas, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995) (internal quotations and citations omitted). In fact, this standard would make it easier for affected employees to challenge retaliatory actions, because they would at least know when they could do so. By contrast, the majority’s interpretation leaves in the dark plaintiffs who seek to bring the dealings of those who defraud the government to light.
The majority points out that state statutes of limitations vary in duration and that a few states, such as Ohio, have a statute of limitations period for wrongful discharge as low as 180 days. But we are not thereby entitled to abandon the statutory text whenever a federal court perceives that a state steps “out of line.” It is altogether plausible that Congress chose to respect both the diverse views of states on the length of limitations periods for wrongful discharge and the consensus view of states that such periods, whatever their length, should run from the date of the retaliatory acts themselves. Of course, Congress could provide a uniform time-period for these actions anytime it chooses to do so. But federal uniformity has never been thought an indispensable feature of federal law. See, e.g., Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680. Other federal statutes, such as the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, have required courts to identify the most analogous state causes of action and to apply state statutes of limitations to federal claims. See Owens v. Okure, 488 U.S. 235, 239-40, 245-48, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (section 1983 actions are governed by state general or residual personal injury statutes of limitations); see also Reed, 488 U.S. at 326-27, 109 S.Ct. 621 (claims under § 101(a)(2) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(2), prohibiting unions from interfering with members’ right to free speech as to union matters, are governed by state general or residual personal injury statutes).
Any difficulties with applying state law suffer in comparison to the difficulties which the majority has created. In some cases, the majority’s new rule may be clear, but in others it will cause uncertainty, and in still others it will discourage or prevent deserving whistle-blowers from having their day in court. Congress may deem it necessary and appropriate to extend the time frame for anti-retaliation claims well beyond those which individual states provide. But until it does so, I would adhere to what I respectfully believe is its presently expressed intent.